## Attachment 1

## Statement of Undisputed Material Facts

Movant's Statement:

| # | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|---|
| 1 | Plaintiff was hired as a probationary employee by Defendant on April 22, 2019, as a Support Services Assistant. Ex. A, Plaintiff's Depo., 22:6-11; 25:9-10; Ex. B, Kimberly Moore Declaration, at ¶ 4; Ex. B-1, Support Services Job Description. | | |
| 2 | On March 19, 2020, Defendant terminated Plaintiff's probationary employment. Ex. C, Declaration of Doug Gray at ¶ 10; *see also* Second Amended Complaint (ECF No. 36-2). | | |
| 3 | Probation support staff, and Support Services Assistants such as Plaintiff, are subject to the Judicial System Personnel Rules. Ex. D, Declaration of Janice McMullin, at ¶ 4. | | |
| 4 | To become a certified employee, pursuant to Colorado's Judicial System Personnel Rules, Plaintiff was required to score 2.76 or higher on her first annual performance appraisal. Ex. D, Declaration of Janice McMullin, at ¶ 8; Ex. D-1, Colorado Judicial System Personnel Rules, at Rule 19. | | |
| 5 | A probationary employee who receives a 2.75 or lower on their first annual performance appraisal must be terminated. Ex. D, Declaration of Janice McMullin, at ¶ 9; Ex. D-1, Colorado Judicial System Personnel Rules, at Rule 19.B.3. | | |
| 6 | During the duration of Plaintiff's probationary employment, Ms. Kimberly Moore (African-American | | |

| | | | |
|---|---|---|---|
| | female) was Plaintiff's direct supervisor. Ex. A, Plaintiff's Depo., 36:3-9; Ex. B, Kimberly Moore Declaration, at ¶ 7. | | |
| 7 | Ms. Moore completed Plaintiff's performance appraisal prior to March 4, 2020, and uploaded it into the performance management system prior to or on March 4, 2020.  Ex. B, Kimberly Moore Declaration, at ¶ 51; Ex. B-2, Plaintiff's Performance Appraisal. | | |
| 8 | Plaintiff scored a 2.75 on her performance appraisal, and pursuant to Colorado's Judicial System Personnel Rules, Doug Gray, Chief Probation Officer decided to terminate Plaintiff's probationary employment. Declaration of Doug Gray, at ¶¶ 4, 6; Ex. D-1, Colorado Judicial System Personnel Rules, at Rule 19. | | |
| 9 | On March 4, 2020, Mr. Gray, consulted with Janice McMullin to inform her that he was going to terminate Plaintiff's probationary employment because she did not score above a 2.75 on her performance appraisal.  Ex. C, Declaration of Doug Gray, at ¶ 6 ; Ex. D, Declaration of Janice McMullin, at ¶ 10. | | |
| 10 | On March 19, 2020, Mr. Gray, Ms. McMullin, and Ms. Moore met with Plaintiff; and Mr. Gray terminated Plaintiff's probationary employment. Ex. A, Plaintiff's Depo., 190:19-21; 233:7-10; Ex. C, Declaration of Doug Gray, at ¶ 10; Ex. D, Declaration of Janice McMullin, ¶ 12; Ex. C-1, Termination Letter. | | |
| 11 | As a Support Services Assistant, Plaintiff's duties included performing administrative tasks for Defendant. Ex. A, Plaintiff's Depo., 23:9-13. | | |
| 12 | These tasks varied from day to day, but often included: putting folders together for the probation officers; | | |

|    | | | |
|----|---|---|---|
|    | answering phones; making copies of documents; processing mail; and acting as a receptionist for clients and visitors to the probation office. Ex. A, Plaintiff's Depo., 25:15-26:4; Ex. B, Kimberly Moore Declaration, at ¶ 9; Ex. B-1, Support Services Job Description. | | |
| 13 | The first week after Plaintiff was hired, she attended new employee orientation training. Ex. A, Plaintiff's Depo., 39:4-8. | | |
| 14 | During her orientation and shortly after, Plaintiff reviewed the Code of Conduct. Ex. A, Plaintiff's Depo., 40:18-22. | | |
| 15 | The expectation for new support staff is to complete the approximately 20 hours of training within 3 years. Ex. B Kimberly Moore Declaration, at ¶ 11; | | |
| 16 | During her period of employment, Plaintiff and other support staff rotated between two work locations, the Lima Office, and the Arapahoe County Justice Center. Ex. A, Plaintiff's Depo., 43:19-44:6. | | |
| 17 | The Arapahoe County Justice Center was a busier and larger facility than the Lima Office. Ex. A, Plaintiff's Depo., 44:17-20. | | |
| 18 | Supervision of the support staff was split between Ms. Karen Johnston and Ms. Moore. Ex. B, Kimberly Moore Declaration, at ¶ 14. | | |
| 19 | Ms. Moore was the first line supervisor for Plaintiff, Alexandria Lombardi, and Manda Thurlow-Martinez; while Ms. Johnston was the first line supervisor for Carol Broome, Barbara Robertson, Colette Walton, and Melantha Harris. Ex. B, Kimberly Moore Declaration, at ¶ 15. | | |
| 20 | Plaintiff was aware that her first line supervisor was Ms. Moore, and that when Ms. Moore was not on leave, Plaintiff was required to go to Ms. | | |

|    | | | |
|----|---|---|---|
|    | Moore for matters such as schedule changes or time off. Ex. A, Plaintiff's Depo., 36:3-9; 51:19-22, 144:10-13; Ex. B Kimberly Moore Declaration, at ¶¶ 17-18. | | |
|    | **Plaintiff's Training** | | |
| 21 | Colette Walton (African-American female) was assigned to help train Plaintiff.  Ex. A, Plaintiff's Depo., 36:10-17; Ex. B, Kimberly Moore Declaration, at ¶¶ 42-43. | | |
| 22 | Plaintiff did not like Ms. Walton's style of training, which Plaintiff described was "cold" and consisted more of "telling [Plaintiff] how to do certain things."  Ex. A, Plaintiff's Depo., 60:23-63:4. | | |
| 23 | Plaintiff was also trained by Manda Thurlow-Martinez and Plaintiff preferred her training style over Ms. Walton's training style.  Ex. A, Plaintiff's Depo., 61:14-63:4. | | |
| 24 | Plaintiff and co-worker Alexandria Lombardi were "trained differently to do different tasks, and that was fine." The training Plaintiff received was not incorrect, just a different way of performing a particular task.  Ex. A, Plaintiff's Depo., 75:12-76:25. | | |
| 25 | Plaintiff contends in her Second Amended Complaint that she was trained differently than two Caucasian employees, but she cannot provide their names, what month they were hired, or how training was inferior Ex. A, Plaintiff's Depo., 91:2-92:23; 76:23- 82:8. | | |
|    | **Plaintiff performed poorly during her probationary employment.** | | |
| 26 | During Plaintiff's probationary employment she struggled in several key areas, including Communication, Personal Leadership/Orientation to Work, Professionalism, and Teamwork. Ex. B, Kimberly Moore Declaration, at ¶ 19; Ex. B-2, Plaintiff's Performance Appraisal. | | |

| | | | |
|---|---|---|---|
| 27 | These deficiencies were addressed with Plaintiff when they arose: Ms. Moore typically memorialized her concerns in contemporaneous correspondence with Plaintiff and in her typed supervisory notes. Ex. B, Kimberly Moore Declaration, at ¶¶ 18-19; Ex. B-2, Plaintiff's Performance Appraisal. | | |
| | **Plaintiff's Performance Problems.** | | |
| 28 | Plaintiff did not follow the chain of command. Ex. B, Kimberly Moore Declaration, at ¶ 22. | | |
| 29 | In April 2019 and approximately one month after Plaintiff began her employment Ms. Moore noted in May 2019 concerns with Plaintiff's refusal to follow the expected chain of command by bringing issues to other supervisors rather than Ms. Moore. Ex. B, Kimberly Moore Declaration, at ¶ 22; Ex. B-3, Kimberly Moore Notes. | | |
| 30 | Ms. Moore noted that she had spoken with Plaintiff numerous times to remind Plaintiff that she should go through her for approval; but, Plaintiff continued to seek different answers from other supervisors, particularly when Ms. Moore gave her an answer Plaintiff disliked or disagreed with. Ex. B, Kimberly Moore Declaration, at ¶ 22; Ex. B-3, Kimberly Moore Notes. | | |
| 31 | Plaintiff ignored Ms. Moore's efforts to counsel Plaintiff on this chain of command issue. Ex. B, Kimberly Moore Declaration, at ¶ 23. | | |
| 32 | In June 2019, Ms. Moore noted that she was continuing to have to remind Plaintiff to stop reporting her workload to Ms. Johnston, and to instead report directly to Ms. Moore. Ex. B, Kimberly Moore Declaration, at ¶ 24; Ex. B-4, Kimberly Moore Notes. | | |

| | | | |
|---|---|---|---|
| | In July 2019 Ms. Moore told Plaintiff she would not be able to attend a Colorado Court Employee Conference ("CCEC conference"). Ex. B, Kimberly Moore Declaration, at ¶ 22 | | |
| 33 | Plaintiff contacted an administrative assistant to see if she could attend. The administrative assistant emailed Plaintiff telling her that Ms. Moore decides who attends the CCEC conference, and Ms. Moore memorialized it in an email on July 24, 2019. Ex. B, Kimberly Moore Declaration, at ¶ 22; Ex. B-5 Email Correspondence. | | |
| 34 | In October 2019, Plaintiff continued to jump the chain of command, and in one instance, asked Ms. Moore to delete a comment she wrote about a probationer. Instead of waiting for Ms. Moore's answer, Plaintiff asked Ms. Johnston to do the same moments later. Ex. B, Kimberly Moore Declaration, at ¶ 26; Ex. B-6, Email Correspondence. | | |
| 35 | Through January 2020, Plaintiff continued to ignore her chain of command. For example, Plaintiff sent scheduling requests to the Chief of Probation – two level above Ms. Moore – requiring the Chief of Probation to remind Plaintiff that scheduling issues needed to be addressed with Ms. Moore. Ex. B, Kimberly Moore Declaration, at ¶ 24; Ex. B-7, Email Correspondence. | | |
| 36 | In addition to contemporaneous conversations with and emails to Plaintiff, Ms. Moore memorialized Plaintiff's consistent failure to follow the supervisory chain of command in the Communication and Personal Leadership/Orientation to Work sections of her performance appraisal. Ex. B, Kimberly Moore Declaration, at ¶ 25. | | |

| | **Plaintiff failed to follow-her work schedule.** | | |
|---|---|---|---|
| 37 | During her period of employment Plaintiff received Defendant's Hours of Workweek Policy No. 1-011, and her work schedule was Monday through Friday, 8 a.m. to 5 p.m., with a one-hour lunch each day.  Ex. A, Plaintiff's Depo., 193:17-22; 195:12-16; Ex. B, Kimberly Moore Declaration, at ¶ 27; Exhibit B-8, Workweek Policy No. 1-011. | | |
| 38 | Ms. Moore noted and counseled Plaintiff about concerns regarding her attendance.  Ex. B, Kimberly Moore Declaration, at ¶ 28. | | |
| 39 | As early as August 26, 2019, Plaintiff understood that her work hours were 8 a.m. to 5 p.m.  Ex. A, Plaintiff's Depo., 199:24-200:1. | | |
| 40 | Plaintiff, however, flexed her work schedule without Ms. Moore's consent and Ms. Moore had to remind Plaintiff of the expectation for her work schedule.  Ex. B, Kimberly Moore Declaration, at ¶ 28; Ex. B-9, Work Hours Email. | | |
| 41 | Ms. Moore met with Plaintiff on August 28, 2019, to discuss the requirements for a flex schedule, and Plaintiff was combative and unreceptive to her supervisor's guidance.  Ex. B, Kimberly Moore Declaration, at ¶ 29; Exhibit B-10, Kim Moore notes. | | |
| 42 | Though Plaintiff was aware of her work schedule and the requirements to be permitted a flex schedule, she continued to show up late for work, fail to take an hour lunch, or stay late to avoid using paid time off.  Ex. B, Kimberly Moore Declaration, at ¶ 30; Ex. B-11, Time Sheet. | | |
| 43 | On November 1, 2019, after Ms. Moore spoke with Plaintiff, she sent Plaintiff another email attaching an example of how Plaintiff should | | |

|    |    |    |    |
|----|----|----|----|
|    | handle paid time off if she arrives to work late, and Plaintiff acknowledged receipt of the same on November 4, 2019.  Ex. B, Kimberly Moore Declaration, at ¶ 31; Ex. B-12, PTO email. |    |    |
| 44 | On November 14, 2019, Ms. Moore issued Plaintiff a supervisory memorandum regarding Defendant's flex policy, and Plaintiff refused to sign it.  Ex. B, Kimberly Moore Declaration, at ¶ 31; Ex. B-13, Supervisory Memo. |    |    |
| 45 | Furthermore, despite knowing that she needed to receive permission to work a flex schedule from Ms. Moore, Plaintiff continued to flex her schedule without prior approval from Ms. Moore, in violation of policy, for example, on December 10, 2019, and February 11-13, 2020.  Ex. B, Declaration of Kimberly Moore, at ¶ 33; Ex. B-14, Time sheets. |    |    |
|    | **Plaintiff was trained how to sign-in and out for the day and she asked another employee to do it for her on at least one occasion in violation of her training**. |    |    |
| 46 | Near the beginning of her employment, Plaintiff was trained how to sign-in and out for the day using the Electronic In/Out (EIO) and Judicial Employees Time Reporting System (JETRS) systems and she was told that only she could use the EIO system to log in and out for herself.  Ex. B, Kimberly Moore Declaration, at ¶ 35; |    |    |
| 47 | However, on December 2, 2019, Plaintiff admitted to calling a co-worker, Joy Rosales who was working at the front desk, to sign Plaintiff into the EIO system even though Plaintiff was still walking up the stairs and not physically at her desk, in violation of her training and instruction.  Ex. B, Kimberly Moore Declaration, at ¶ 36; Ex. B-15, Clock-in emails. |    |    |

Case 1:20-cv-01687-SKC   Document 60-1   Filed 09/01/21   USDC Colorado   Page 9 of 13

| | | | |
|---|---|---|---|
| 48 | When Ms. Moore counseled Plaintiff, she became defensive, did not take responsibility, and threw her arms in the air exclaiming "Ooooo, we don't want to get Miss Joy in trouble now do we? I won't be doing that anymore." Kimberly Moore Declaration, at ¶ 36; Ex. B-15, Clock-in emails. | | |
| | **Plaintiff filed a complaint about lack of training and personality conflicts she was experiencing with her co-workers, but she did not allege discrimination or a hostile work environment because of a protected class**. | | |
| 49 | On or about September 6, 2019, Plaintiff filed a complaint with Janice McMullin, Human Resources in the State Court Administrator's Office, claiming that she was working in a hostile work environment. Ex. A, Plaintiff's Depo., 67:15-68:13; Ex. D-2, Complaint. | | |
| 50 | Plaintiff wrote that Ms. Walton and Ms. Barbara Robinson were purportedly engaging in harassment. Ex. A, Plaintiff's Depo., 69:15-22; Ex. D-2, Complaint. | | |
| 51 | Plaintiff's complaint provided specific concerns about her supervisor and co-workers, but she did not mention race/color or any other unlawful discrimination or hostile work environment because of her race/color either in her complaint or when I interviewed her. Ex. D-2, Complaint. | | |
| | **Plaintiff and her African-American co-worker, Colette Walton, had a personality conflict and Plaintiff did not like Ms. Walton's training style**. | | |
| 52 | Plaintiff believed that Ms. Walton created a hostile work environment because she was "cold" and short in her responses toward Plaintiff, "catty and unprofessional." Ex. A, Plaintiff's Depo., 84:5-85:1. | | |
| 53 | Plaintiff believed Ms. Walton was unfriendly, closed-minded, and confrontational because she would come into her office unannounced and sit in a chair next to Plaintiff's desk | | |

Page **9** of 13

| | | | |
|---|---|---|---|
| | and ask Plaintiff what she needed and she would then walk away after Plaintiff said she did not need anything from Ms. Walton. Ex. A, Plaintiff's Depo., 84:5-85:1. | | |
| 54 | Plaintiff also believed Ms. Walton talked to her in an embarrassing tone because on one occasion Ms. Walton talked to Plaintiff about what they were going to do for lunch while Plaintiff was trying to assist a customer.  Plaintiff believes Ms. Walton's conduct was unprofessional, intimidating, and embarrassing.  Ex. A, Plaintiff's Depo., 87:8-88:5. | | |
| 55 | Plaintiff also complained to Ms. Moore that Ms. Walton displayed a "nonverbal attitude of negativity" in a staff meeting. Ex. A, Plaintiff's Depo., 101:7-102:1. | | |
| 56 | Plaintiff also complained that she believed she was not being trained the same as her co-workers. Ex. E, Traci Sogi Declaration at ¶ 6; Ex. D-2, Complaint. | | |
| 57 | The investigation, revealed, however, that even if some of the training was moving slower as compared to co-worker, Ms. Lombardi, it was likely a result of different learning styles and because of personality conflicts between Ms. Walton and Plaintiff. Ex. E, Tracey Sogi Declaration, at ¶ 6; Ex D-2, Complaint. | | |
| 58 | The investigation also determined that Plaintiff's training may have been moving slower because Plaintiff spent a significant amount of time in training unrelated to her job duties; including 31.5 hours of work time completing off site training in the first four months of her employment.  Ex. E, Tracey Sogi Declaration, at ¶ 6; Ex D-2, Complaint. | | |
| 59 | The investigation was not able to substantiate that Plaintiff was subject | | |

|    | | | |
|----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---|---|
|    | to a hostile work environment because of any protected class because these concerns were never raised and the facts did not support such a finding. Ex. E, Tracey Sogi Declaration, at ¶ 5; Ex D-2, Complaint. | | |
|    | **Plaintiff was not subject to discrimination because of a protected class and she has no direct evidence of discrimination because of a protected class.** | | |
| 60 | Ms. Walton, Ms. Moore, and Mr. Gray never made any racial comments directed toward Plaintiff, nor did they make any racist comments about Plaintiff to anyone else.  Ex. A, Plaintiff's Depo., 117:8-10, 18-22; 118:2-21. | | |
| 61 | Plaintiff recalls one instance of a co-worker, Manda Thurlow-Martinez, telling her that the reason there was hostility between Ms. Moore and a different Caucasian supervisor, Ms. Karen Johnston, was because Ms. Thurlow-Martinez believed Ms. Moore was African-American.  Ex. A, Plaintiff's Depo., 54:21-55:20. | | |
| 62 | Plaintiff does not recall the day or month Ms. Thurlow-Martinez made this comment.  Ex. A, Plaintiff's Depo., 55:12-15. | | |
| 63 | Plaintiff does not know if Ms. Karen Johnston demonstrated animosity toward Plaintiff because of her color, and she does not have knowledge of Ms. Johnston demonstrating animosity toward Plaintiff's African-American co-worker, Ms. Walton. Ex. A, Plaintiff's Depo., 136:1-4; 137:8-10. | | |
| 64 | The only reason why Plaintiff speculates Ms. Johnston had animosity toward Plaintiff because of her color was an instance where Ms. Johnston's granddaughter, who had fair complexion and green eyes, visited Ms. Johnston, and during that visit Ms. Johnston mentioned to Plaintiff that her granddaughter was | | |

| | | | |
|---|---|---|---|
| | her favorite because her granddaughter reminded her of someone in Ms. Johnston's family. Ex. A, Plaintiff's Depo., 136:1-137:10. | | |
| 65 | In Plaintiff's Second Amended Complaint she alleges that she was harassed because she was unjustly accused of sending a text message to a supervisor without permission, but Plaintiff does not know who made the accusation and no evidence it was racially motivated. Ex. A, Plaintiff's Depo., 166:7-167:12; 172:5-18; 173:4-174:2. | | |
| | **Plaintiff's termination of employment was not in retaliation for any purported complaint and the decision to terminate Plaintiff's employment was made prior to her charges of discrimination being filed**. | | |
| 66 | On March 10, 2020, Plaintiff filed her first charge of discrimination with the EEOC. Ex. A, Plaintiff's Depo., 67:3-14; | | |
| 67 | Plaintiff did not provide this charge of discrimination to Defendant. Ex. A, Plaintiff's Depo., 184:1-4. | | |
| 68 | On or about March 17-18, 2020, Plaintiff received the EEOC's dismissal and notice of rights relating to her first charge of discrimination. Ex. A, Plaintiff's Depo., 184:11-185:17. | | |
| 69 | Plaintiff did not provide the EEOC's dismissal and notice of rights to sue relating to her first charge of discrimination to Defendant. Ex. A, Plaintiff's Depo., 185:21-24. | | |
| 70 | On June 30, 2020, Plaintiff filed a second charge of discrimination only claiming that her termination of employment was retaliatory. Ex. A, Plaintiff's Depo., 244:19-245:13; | | |
| 71 | Mr. Gray and Ms. Moore did not know that Plaintiff filed a charge of discrimination with the EEOC on March 10, 2020; that she received a notice of rights to sue letter from the | | |

| | | | |
|---|---|---|---|
| | EEOC on March 17-18, 2020; or that Plaintiff filed a second charge of discrimination with the EEOC until after he already made the decision to terminate Plaintiff's employment on March 4, 2020 and after he actually terminated her employment on March 19, 2020.  Ex. C, Declaration of Doug Gray, at ¶ 13; Ex. B, Declaration of Kimberly Moore, at ¶ 50. | | |